## Commonwealth v. Large Distilling Company

*Philip S. Moyer*, Deputy Attorney General, and *Wm. A. Schnader*, Attorney General, for Commonwealth.

*Snyder, Miller, Hull & Hull, Reed, Smith, Shaw & McClay*, and *James V. Murray*, for defendant.

HARGEST, P. J., October 29, 1934.—This case comes before us upon appeal from the settlement of an account for bonus for the year 1931 made by the Secretary of Revenue on June 20, 1932, and approved by the Auditor General June 22, 1932. A stipulation to try the case without the intervention of a jury, under the Act of April 22, 1874, P. L. 109, and also an agreement as to facts, have been filed. We briefly restate the facts, as follows:

Large Distilling Company, a corporation of the State of Maryland, registered to do business in Pennsylvania, filed its bonus report for 1931, showing $54,155.18 to be the actual value of tangible property located in Pennsylvania on December 31, 1931, but in its petition for review set out that the value of such property was $56,100.54. The accounting officers, having ascertained that the defendant company owned 12,001 barrels of whiskey which was in a bonded warehouse at Large, Allegheny County, Pa., fixed the value of the tangible property located in Pennsylvania at $2,809,606 and after giving credit for $54,-

155, the amount of capital shown in the last statement, assessed a bonus of one third of 1 percent, amounting to $9,184.84 upon $2,755,451, representing an increase of capital.

The appellant paid $6.48 and the interest thereon upon such increase, leaving an unpaid balance of bonus amounting to $9,178.36.

On January 2, 1931, the appellant purchased in New York City the warehouse receipt for said whiskey and secured an assignment of said receipt from the "1931 Corporation", a Delaware corporation, and continued to own the same until December 31, 1931. At the time of the purchase of the warehouse receipt, January 2, 1931, the appellant also acquired title to the premises and warehouse wherein the whiskey referred to in said receipt was stored.

### Discussion

The question is whether whiskey in a warehouse in Pennsylvania in 1931, owned by a foreign corporation through the medium of a warehouse receipt or whiskey certificate, is capital employed in Pennsylvania, so as to make it subject to the payment of bonus, particularly since, under the regulations of the Federal Government, such whiskey could have been sold only to persons or corporations which had permits for the purchase thereof from the Federal Government.

The Act of May 8, 1901, P. L. 150, 72 PS §1851, provides, in part, that foreign corporations "which have any part of their capital actually employed wholly within this State, . . . shall pay to the State Treasurer, for the use of the Commonwealth, a bonus of one-third of one per centum upon the amount of their capital actually employed or to be employed wholly within the state of Pennsylvania, and a like bonus upon each subsequent increase of capital so employed." The defendant corporation, a distilling company, was a permittee under the Act of Congress and authorized to deal in whiskey.

In Commonwealth v. Tonopah Mining Company of Nevada, 12 Dauph. 91, this court held, construing the bonus act above referred to:

"Under the revenue laws of the state, doing business and employing and using capital or property, as applied to foreign corporations, are equivalent terms; and employing capital or using property means the employment and use of capital or property in aid or in exercise of some corporate activity."

Bonus is not a tax. It is the consideration for the grant to foreign corporations of the privilege of doing business and using property in this State: Commonwealth v. Merchant Shipbuilding Co., 26 Dauph. 89; Commonwealth v. Valvoline Oil Co., 32 Dauph. 99. This State has no control over the franchises of a foreign corporation. Its control is limited to the privilege of doing business, or taxation, and is measured by the amount of the tangible property located in the State: Commonwealth v. G. W. Ellis Co., 237 Pa. 328; Commonwealth v. Curtis Publishing Co., 237 Pa. 333; Commonwealth v. Schwarzschild, 259 Pa. 130, 136, affirming 20 Dauph. 6.

The principle involved in the imposition of bonus and the taxation of capital stock of foreign corporations is similar. Both involve only the tangible property in the State. In Commonwealth v. Curtis Publishing Co., 237 Pa. 333, 335, it is said by the court below with reference to a foreign corporation:

"The tax on the capital stock of a corporation is a tax upon its property. Its capital stock is in the State to the extent that its property which represents its capital stock is in the State. So much of its capital stock is taxable in the State as is represented by its property taxable in the State. The real question therefore before us is whether the property sought to be taxed as representing the

capital stock is in the State for the purposes of taxation within the contemplation of law."

We think the instant case is determined by the principles laid down in the cases of Commonwealth v. National Cash Register Co., 271 Pa. 406, 408, Commonwealth v. Motors Mortgage Corp., 297 Pa. 468, Commonwealth v. Weirton Steel Co., 277 Pa. 6, affirming 25 Dauph. 154, and Commonwealth v. Andrews & Hitchcock Iron Co., 20 Dauph. 143.

The case of Commonwealth v. National Cash Register Co., supra, involved a capital stock tax. The defendant, a corporation of the State of Ohio, doing business in Pennsylvania, had on lease in Pennsylvania a large number of cash registers. It retained the title but agreed to surrender the property upon payment of the rental reserved in the leases, and notes were given by the lessee to secure the payment of instalments coming due under the leases. The defendant objected to the tax on the ground that it was "in substance levied on accounts receivable rather than on tangible assets within this State".

The court held that "the situs of the property is in Pennsylvania and represents an investment here of the capital of a company doing business in this State."

In the case of Commonwealth v. Motors Mortgage Corp., supra, a capital stock tax was imposed upon automobiles in the State under bailment leases owned by the defendant, a Delaware corporation. The same defense was interposed, namely, that the corporation was in the position of a money lender holding the notes with the automobiles pledged as collateral. The Supreme Court rejected that contention and held that the automobiles represented the property of the corporation and were therefore taxable as part of its capital employed in this State.

The case of Commonwealth v. Weirton Steel Co., supra, was a bonus case. The defendant, a West Virginia corporation, purchased coal land in Fayette County. The company was not using the land, but the Commonwealth settled a bonus against the corporation for the amount invested in the purchase, on the ground that the property represented part of the capital of the corporation used in this State. In that case the Supreme Court, sustaining the bonus, quoted our language, as follows:

" 'The employment contemplated by the act is not limited to the employment and use of the property purchased and owned, but extends to the investment or use of the capital in acquiring property. If this were not so, a foreign corporation could frequently have in this State without taxation a large amount of property for its corporate purposes, which was not actually being used, but which was receiving the protection of the laws of the State. To meet such a case the legislature provided that if the company's capital was invested in the property or employed in acquiring it, the capital stock represented by such capital should be subject to taxation.' In this case, although the defendant company 'has opened no mines nor conducted any mining operations on the land, . . . we think the capital is just as effectually employed when used for the purchase of coal property, for future corporate uses, as it would be if the coal or land purchased were being presently put to such uses.' "

In the case of Commonwealth v. Andrews & Hitchcock Iron Co., 20 Dauph. 143, the capital stock tax was imposed upon the defendant, a manufacturing corporation of the State of Ohio, which was also authorized by its charter to own and operate coal mines and coal lands. The tax was upon coal lands purchased in Pennsylvania upon which no mining operations had been started. This court held:

"The employment contemplated by the Pennsylvania statutes imposing tax

on the capital stock of foreign corporations is not limited to the employment and use of property purchased and owned but extends to the investment and use of capital in acquiring property.

"Coal in place and surface land in Pennsylvania, owned by a foreign manufacturing corporation and purchased under a power given in its charter, is subject to capital stock tax though the corporation does not carry on manufacturing in this state nor maintain an office, agent or place of business here."

The whiskey involved in this case was purchased by the defendant in the exercise of its corporate powers and is being held, under the protection of the laws of this State, for the corporate uses of the defendant corporation. Unless there is something peculiar to property acquired by a warehouse receipt or a whiskey certificate, either because of the manner in which it is acquired or the uses to which it is to be put, there certainly can be no difference in the principles to be applied to this case from those applied in the cases to which we have referred.

What, then, is a warehouse receipt? A warehouse receipt is a document or muniment of title. It passes title subject to the lien of the warehouseman, and the property covered by it may be assigned by the original holder to a purchaser: Dale v. Pattison, 234 U. S. 399; Union Trust Co. et al. v. Wilson, 198 U. S. 530. In the latter case it is held:

"The transfer of a warehouse receipt is not a symbolical delivery, but a real delivery to the same extent as if the goods had been transported to another warehouse named by the pledgee."

In the case of Selliger v. Kentucky, 213 U. S. 200, 206, an attempt was made to impose a tax upon whiskey or the warehouse receipt for the whiskey, which had been shipped to Germany, on the theory that the whiskey had been sent abroad to escape the tax.

The lower court held that the whiskey was exempt. The appellate court affirmed that decision, on the ground that the situs of the whiskey was outside the State, and the Court of Appeals of Kentucky held that while the whiskey was beyond the taxing power there was authority to tax the warehouse receipts. The Supreme Court of the United States reversed, saying:

"We take it to be almost undisputed that if the warehouses were in Kentucky the State would not and could not tax both the whiskey and the receipts, even when issued in Kentucky form, and that it would recognize that the only taxable object was the whiskey. The relation of the paper to the goods is not changed by their being abroad, and the only question in the case is whether the paper can be treated as property equivalent in value to the goods, because in some way it represents them." We think this case is practically the converse of the instant case.

The defendant relies upon the case of Taney, Trustee, v. Penn National Bank of Reading, 232 U. S. 174, in which it was held that a warehouse receipt for whiskey is subject to the condition that physical delivery cannot be effected until the tax is paid, which is tantamount to saying until the government control is lifted. And so it is argued by the defendant that because of the Federal regulations in the enforcement of prohibition, adopted pursuant to the acts of Congress, restricting the manufacture and sale of whiskey by and to authorized persons only, a whiskey certificate cannot and does not give the right to possession, and therefore cannot be taxable property because it is not under the complete control of the owner. We cannot agree that, because certain governmental regulations were imposed before actual delivery, during 1931, the capital of the company invested in the whiskey was any the less capital employed in the State of Pennsylvania. If a foreign manufacturing chemical company had deadly

poisons in storage in Pennsylvania, could it be said that merely because those poisons could only be sold to wholesale druggists or other manufacturing chemists under governmental regulations that the capital invested in those poisons did not represent property? If the whiskey in this case was not property and therefore did not represent capital invested in the State, merely because its sale was limited and subject to government regulation, would the warehouse receipts be any more property? They would be subject to the same regulation before actual possession of the whiskey could be obtained. It must not be overlooked that the defendant here owns the warehouse as well as the whiskey and therefore has no warehouseman's lien. It could hardly be contended that a domestic distilling corporation which owned a warehouse receipt for whiskey in the State would not be subject to a capital stock tax because, before it could obtain the possession of the whiskey, it had to obtain permits and comply with other governmental regulations. So to argue would be to argue that whiskey was not property upon which any tax could be imposed, and if the whiskey was not property how could the warehouse receipt represent property? Certainly if such whiskey would be subject to a capital stock tax, it would be subject to bonus, otherwise foreign corporations would be favored as to the same property. This clearly demonstrates that the appellant's contention is not sound. It therefore follows that this tax must be sustained. There is no question as to the amount.

### Conclusions of law

1. Whiskey in a bonded warehouse in Pennsylvania, in the year 1931, owned by a foreign corporation through the medium of a purchase of the warehouse receipt, represents capital employed in Pennsylvania and is subject to the settlement of a bonus thereon.

2. The fact that the sale of such whiskey was subject to regulations imposed by the Federal Government did not change its status insofar as the corporation owning it is liable for bonus.

3. The Commonwealth is entitled to judgment against Large Distilling Company, defendant.

### Statement

| | |
|---|---:|
| Amount of tax | $9,178.36 |
| Interest from August 21, 1932, being 60 days after date of settlement | 1,205.30 |
| | $10,383.66 |
| Attorney General's commission, 5 percent | 519.18 |
| Total | $10,902.84 |

And now, October 29, 1934, judgment is hereby directed to be entered in favor of the Commonwealth of Pennsylvania and against Large Distilling Company, in the sum of $10,902.84, unless exceptions be filed within the time limited by law.